The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.



**/S/ RUSS KENDIG**

Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 7 |
| ) | |
| BARBARA A. AUDY, ) | CASE NO. 08-60062 |
| Debtor. ) | |
| ) | ADV. NO. 08-6117 |
| ANTHONY J. DEGIROLAMO, ) | |
| Plaintiff, ) | JUDGE RUSS KENDIG |
| ) | |
| v. ) | **MEMORANDUM OF OPINION (NOT INTENDED FOR PUBLICATION)** |
| U.S. BANK, N.A., et al., ) | |
| Defendants. ) | |

Now before the Court is Plaintiff's Motion for Summary Judgment against Defendant U.S. Bank ("Defendant") in the above-captioned adversary proceeding. Plaintiff Anthony J. DeGirolamo, the duly-appointed chapter 7 trustee in this case ("Plaintiff" or "Trustee"), filed the instant motion on April 3, 2009. Defendant filed a response on April 30, 2009. Plaintiff filed a reply on May 4, 2009.

The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K) and (N). The following constitutes the Court's findings of fact and conclusions of law pursuant to

1

Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Debtor Barbara A. Audy ("Debtor") filed for protection under chapter 13 of the Bankruptcy Code on January 11, 2008. Her case was converted to one under chapter 7 on August 20, 2008. Plaintiff was appointed as trustee at that time.

Prior to filing, Debtor and her sister Gloria J. McLeod[1] ("McLeod") were joint owners of real property at 1227 11th St. NW in Canton, Ohio, as well as a second parcel of real property in Florida. Debtor and McLeod each acquired a one-quarter interest in the property on January 12, 1996, when a certificate of transfer in the Stark County Probate Court (the "probate court") conveyed the one-half interest of Nora L. Audy, deceased, to Debtor and McLeod. Debtor and McLeod acquired the other one-half interest in the property on January 15, 1996, when the joint owners of the other undivided one-half interest in the property, Evelyn M. Saab and Lena A. David, executed a quitclaim deed conveying their interest to Debtor and McLeod. The certificate of transfer from the probate court was recorded on March 19, 1996 in the Stark County Recorder's Office. As a result, Debtor and McLeod each owned an undivided one-half interest in the Canton property.

On September 12, 2006, Debtor deeded her one-half interest in the Florida property to McLeod, while McLeod agreed to deed her one-half interest in the Canton property to Debtor, though she had not yet done so at the time of the petition. McLeod later quitclaimed her interest in the Canton property to Debtor, on October 27, 2008.

On September 9, 2005, Debtor and McLeod executed a mortgage on the Canton property in favor of EquiFirst Corporation (with Mortgage Electronic Registration Systems, Inc. ("MERS") named as nominee and servicer), though only Debtor signed the promissory note associated with that mortgage. This mortgage was ultimately assigned to Defendant. The legal description attached reads, in part, "[a]n undivided one-half interest in real estate ..."

Defendant filed a "Complaint in Foreclosure and for Reformation of Mortgage" in the Stark County Court of Common Pleas (the "state court") on November 8, 2007. That complaint alleged, *inter alia*, that "... the mortgage ... contained an incorrect legal description ..." owing to either mutual mistake or to scrivener's error, and asked the state court to reform that legal description. On November 30, 2007, an assignment from MERS to Defendant was filed for recordation in the Stark County Recorder's Office.

---

[1] McLeod was a defendant in this action but did not file an answer, and the Court entered a default judgment against her on December 4, 2008, finding her to have no further interest in the Canton property.

2

Debtor filed for bankruptcy on January 11, 2008. In her Schedule D, she listed U.S. Bank's total claim as $129,999.00, with a secured portion of $100,000.00.

Plaintiff filed the three-count complaint in the instant adversary proceeding on October 17, 2008. The first count alleges that Defendant's mortgage upon the Canton property covers only a one-half interest in the property, not the entire property. The second count asks the court to authorize a sale of the entire Canton property. Finally, the third count asks that the costs and expenses incurred in such a sale, including legal fees, closing costs, and trustee's fees, be charged to the respective title, claims, encumbrances, and interests in the property.

Defendant filed an answer on November 21, 2008, denying the allegations of the complaint and asserting various affirmative defenses. Most specifically, Defendant's answer contests the notion that its mortgage on the Canton property encumbers only a one-half interest in that property; however, Defendant also denies that Trustee has the right to sell the entire property and charge the costs to the respective interests therein.

On April 3, 2009, Plaintiff filed the instant motion for summary judgment. Trustee argues first that the equitable doctrine of laches should bar Defendant's attempt to have the mortgage reformed, given that the mortgage was filed with the recorder's office on September 22, 2005 and the complaint for reformation was brought on November 8, 2007. Second, he argues that Defendant's plea for reformation should fail on the ground that it was not the owner of the mortgage at the time it filed that complaint; it did not acquire ownership of the mortgage until November 30, 2007.

Defendant filed its response on April 30, 2009. Defendant argues primarily that all parties intended to encumber the entire property, and that the mortgage therefore legally encumbers the entire parcel, not merely a one-half interest therein. Defendant argues that the text of the mortgage to the contrary was based on a drafting error and that it can be ignored given the mutual intent of the parties. In the alternative, Defendant argues that even without reforming this alleged error in the text of the mortgage itself, the mortgage as written encumbers a three-quarter interest in the Canton property.

Plaintiff filed his reply on May 4, 2009, arguing that certain portions of Defendant's complaint–to wit, arguments based on the *lis pendens* doctrine and based on what might defeat Trustee's strong-arm powers under the Code–were off-topic. The Court agrees with Plaintiff on this count and focuses the following legal analysis on the heart of the legal dispute between the parties: the extent of the lien, not the priority of it. Trustee has not contended that he has a superior claim to that part of the property that Defendant's lien covers; he is arguing that part of the property is unencumbered. The Court turns to address the legal issues raised by this claim.

## LEGAL ANALYSIS

08-06117-rk    Doc 37    FILED 08/31/09    ENTERED 08/31/09 16:23:01    Page 3 of 7

## I. Standard of Review

Motions for summary judgment are governed by Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56. That rule provides, in part:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

The evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H.Kress & Co., 398 U.S. 144, 158-59 (1970). Summary judgment is not appropriate if a material dispute exists over the facts, "that is, if evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## II. Standing to Bring Mortgage Reformation Action

The Court turns first to Plaintiff's standing argument.

As this Court reads Ohio's law, Plaintiff would have a valid argument in state court, because Defendant here was the one bringing the reformation action there. Ohio Civ. R. 17(A) requires that "[e]very action shall be prosecuted in the name of the real party in interest," although "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest." Ohio's First District Court of Appeals recently held, on facts very similar to those at bar, that a putative mortgagee that lacked standing at the time the case was filed could not later cure the defect and protect itself from dismissal by acquiring the mortgage that it had claimed it had owned at the outset. Wells Fargo Bank, N.A. v. Byrd, 897 N.E.2d 722 (Ohio Ct. App. 2008). In Byrd, Wells Fargo filed a foreclosure action against the defendants more than a month before it was assigned the mortgage on which it had foreclosed. The court of appeals held that the later acquisition of the mortgage could not cure the lack of standing and that it was not the legal equivalent of a ratification of the foreclosure suit by the party that had owned the mortgage at the time of filing. This Court finds that the section of that court of appeals opinion dealing with this issue was appropriately captioned: "Putting the Cart Before the House." Id. at ¶¶ 1-2.

08-06117-rk    Doc 37    FILED 08/31/09    ENTERED 08/31/09 16:23:01    Page 4 of 7

However, standing issues are not merits issues. Plaintiff has shown only that Defendant lacked the standing to bring the action for foreclosure and reformation in the state court, not that Defendant was actually not legally entitled to either of those remedies. The same case that Plaintiff cites in support of its standing argument holds the same: the state court of appeals amended the judgment of the district court from one with prejudice to one without prejudice, holding that the dismissal was not on the merits and therefore should not have been held prejudicial. Byrd at ¶¶ 18-19.

The procedural posture of this case is not the same as that found in the state court action. Plaintiff brought this complaint in his capacity as trustee to determine the validity, priority, or extent–in this case, specifically, the extent–of Defendant's lien. Trustee has standing as representative of the estate under 11 U.S.C. § 323(a) to invoke the power of this court to determine the status of security interests under 11 U.S.C. § 506. Indeed, proceedings to determine the validity, priority, and extent of liens are core proceedings under 28 U.S.C. § 157(b)(2)(N). Defendant now brings his reformation argument as a defense against Trustee's contention that the extent of its lien reaches only half of the subject property. That argument is inextricably linked to the determination of the extent of the lien, the very task for which Trustee invoked this Court's authority. Since the issue of the extent of the lien is properly before the Court, the issue of whether Defendant was entitled to reformation of the mortgage under Ohio law is properly before the Court.

### III. Laches

The Court turns next to whether the equitable doctrine of laches bars Defendant from pursuing reformation at this date. Laches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party. Connin v. Bailey, 472 N.E.2d 328, 329 (Ohio 1984). The elements of a laches defense are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for such delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party. State ex rel. Meyers v. City of Columbus, 646 N.E.2d 173, 174 (Ohio 1995).

Plaintiff alleges no further grounds for barring Defendant's reformation action other than the passage of time. The mortgage in the case at bar was granted on September 9, 2005, and the state court complaint for reformation was filed on November 8, 2007. While this is a considerable span–more than two years–that alone is insufficient to establish that laches bars a claim. First, the lapse of time for a party pursuing reformation is not measured from when the mistake occurs, but when it is actually discovered. Ormsby v. Longworth, 11 Ohio St. 653, 667-68 (Ohio 1860). No evidence has been presented to the Court regarding when U.S. Bank became aware that the legal description was other than it had believed. In addition, Plaintiff's motion advances no argument that Defendant had knowledge, actual or constructive, of the alleged mistake, or that Plaintiff would be prejudiced by being compelled to deal with Defendant's claim for reformation now rather than earlier. Plaintiff's jejune argument thus fails to establish even one of the elements of a laches defense.

## IV. Mortgage Reformation Under Ohio Law

Reformation under Ohio law begins with Ohio Rev. Code § 2719.01, which provides, in full:

> When there is an omission, defect, or error in an instrument in writing or in a proceeding by reason of the inadvertence of an officer, or of a party, person, or body corporate, so that it is not in strict conformity with the laws of this state, the courts of this state may give full effect to such instrument or proceeding, according to the true, manifest intention of the parties thereto.

It is a long-standing rule of Ohio law that when a mortgage has been properly executed and recorded, a mistake in the legal description of the mortgaged premises will be corrected in equity. Strang v. Beach, 11 Ohio St. 283, 287 (1860); see also Kildow v. EMC Mortgage Corp. (In re Kildow), 232 B.R. 686, 694 (Bankr. S.D. Ohio 1999) (reformation appropriate when mortgagor intended to grant, and mortgagee intended to take, mortgage on entire parcel notwithstanding the fact that mortgage deed described an area that covered only part of the parcel); Phoenix Concrete, Inc. v. Reserve-Creekway, Inc., 654 N.E.2d 155 (Ohio Ct. App. 1995) (reformation of deed to include easement appropriate when owner's chief operating officer admitted that owner had granted easement to neighboring property owners and owner had consented to neighboring property owners' paving driveway within easement). In order to reform an instrument, clear and convincing evidence must show that the parties made a mutual mistake. Phoenix Concrete at 157; see also Davenport v. Widow and Heirs at Law of John Sovil, 6 Ohio St. 459, 464 (1856) ("before courts proceed to administer a remedy for the alleged mistake, they should require its existence to be established by very clear and satisfactory evidence").

After advancing his standing argument, Plaintiff spends the bulk of his motion for summary judgment arguing that because U.S. Bank or its agent(s) prepared the allegedly erroneous legal description, that the law should not offer Defendant relief from the consequences of its own mistake. The cases Plaintiff cites all suffer from a common drawback in the Court's analysis of the reformation issue, however: none so much as mention reformation. Plaintiff attempts to reason by analogy to other equitable doctrines that can be invoked to protect a party against fraud or mistake, most prominently including equitable subrogation. Equitable subrogation and reformation, however, are distinct equitable remedies. Equitable subrogation "arises by operation of law when one having a liability or right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid." State v. Jones, 399 N.E. 1215, 1217 (Ohio 1980). It is applied to prevent unjust enrichment. Id. at 1219 (Holmes, J., dissenting); Williams v. Erie Ins. Group, 621 N.E.2d 770, 773 (Ohio Ct. App. 1993). The elements of the two remedies are highly dissimilar, and the Court therefore can find little assistance in cases analyzing equitable subordination claims as it considers an asserted right of reformation.

The Court finds that issues of material fact remain with respect to whether Defendant is entitled to reformation of its mortgage. Specifically, there has been very little factual evidence

presented by either side on the central factual concern of reformation, i.e., whether there was in fact a mutual mistake at the time the mortgage was granted. Plaintiff has produced no evidence on the issue whatsoever. Defendant has produced the affidavit of a title examiner that "Barbara A. Audy and Gloria J. McLeod ... *may* have intended to grant MERS a mortgage lien encumbering a whole undivided interest in the Property." (Def.'s Ex. A ¶ 9.) (Emphasis added.) Defendant has also produced an affidavit from a senior litigation analyst at Homecomings Financial, Defendant's own servicing agent, stating that "it appears that the all [sic] parties described herein intended that the Mortgage encumber the entire fee simple interest in the Property of all title holders." (Def.'s Ex. D ¶ 5.) Of the two affidavits submitted, one is equivocal ("*may* have intended ...") and both are conclusory–hardly clear and convincing evidence of mutual mistake.

## V. Sale and Charging of Costs

Neither Plaintiff's motion for summary judgment nor Defendant's brief in opposition pursued the remaining issues raised by the complaint, namely, Plaintiff's assertion of the right to sell the entire property pursuant to 11 U.S.C. § 363(h) (establishing the requirements a trustee must meet in order to sell a co-owner's interest in property in which a debtor has an undivided interest as a tenant in common, joint tenant, or tenant by the entirety), and to charge his costs to the respective interests therein under 11 U.S.C. § 506(c). Trustee's invocation of § 363(h) appears to be moot at this point, because McLeod quitclaimed her interest in the property to Debtor after this adversary was filed. However, as neither party addressed these issues in any of the summary judgment pleadings, the Court renders no ruling on these issues at this juncture.

An order consistent with this opinion will be entered contemporaneously.

# # #

## Service List:

Phillip D Schandel
116 Cleveland Ave, N.W.
Courtyard Centre
#709
Canton, OH 44702

Nathan Swehla
120 E. 4th St.
Cincinnati, OH 45202

Anthony J. DeGirolamo
Courtyard Centre

Suite 625
116 Cleveland Avenue NW
Canton, OH 44702